Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| DAISY Y. PEREZ AMILL<br><br>**Apelante**<br><br>V.<br><br>MANATÍ AUTO, LLC.;<br>MANATÍ AUTO LLC<br>D/B/A PUMA 926;<br>D´SHOW GROUP LLC<br>**Apelado** | TA2026AP00412 | *APELACIÓN*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala<br>Superior de Bayamón<br><br>Civil. Núm.<br>TO2026CV00264<br><br>Sobre:<br>Salarios; Reclamación<br>Ley 2; Procedimiento<br>Sumario de<br>Reclamaciones<br>Laborales |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 7 de mayo de 2026.

El 23 de abril de 2026, la Sra. Daisy Y. Pérez Amill (señora Pérez o la apelante) compareció ante nos mediante *Apelación* y solicitó la revisión de una *Sentencia* que se dictó y notificó el 16 de abril de 2026 por el Tribunal de Primera Instancia, Sala Superior de Toa Alta (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Querella* presentada por la apelante al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA sec. 3120, *et seq.* (Ley Núm. 2). Consecuentemente, ordenó el cierre y archivo del caso. Fundamentó su determinación en que debido a que la señora Pérez presentó voluntariamente su renuncia con efectividad inmediata el 26 de diciembre de 2026, no se trataba de un despido injustificado por parte del patrono del cual quedaba protegido el obrero al amparo de la Ley Núm.2, *supra*.

Por los fundamentos que expondremos a continuación, ***revocamos*** el dictamen apelado.

I.

El 11 de marzo de 2026, la señora Pérez presentó una *Querella* sobre reclamación de salarios al amparo de la Ley Núm.2, *supra*, contra Manatí Auto, LLC, Manatí Auto LLC d/b/a Puma 926, y D'Show Group LLC (en conjunto, los apelados).[1] Alegó que trabajó para Manatí Auto, LLC y D'Show Group, LLC desde el 15 de septiembre de 2020 hasta el 26 de diciembre de 2025, fecha en que renunció, ocupando el puesto de Gerente General. Sostuvo que, conforme a su contrato de empleo, devengaba un salario mensual de $5,000.00 pagadero quincenalmente, además de un bono de Navidad de $1,000.00, acumulación de licencias de vacaciones y enfermedad, un pago mensual de $1,000.00 por concepto de *car allowance* y un cinco por ciento (5%) de la ganancia "front net" pagadero trimestralmente.

Sostuvo que, aunque fungía como Gerente General, también realizaba funciones adicionales en las áreas de Recursos Humanos y Contabilidad. Indicó que, desde el año 2021, trabajó la contabilidad de una estación de gasolina operada por Manatí Auto, LLC bajo el nombre comercial Puma 926, por lo cual recibía una compensación adicional de $2,500.00 mensuales, aumentada luego a $3,000.00 mensuales en el año 2023. Expuso que, ello elevó su compensación total a $8,000.00 mensuales entre ambos empleos.

Expresó que, en múltiples ocasiones, el patrono le solicitó realizar pagos necesarios para la operación del negocio con su tarjeta de crédito personal, los cuales usualmente eran reembolsados. Sin embargo, alegó que al momento de su renuncia se le adeudaban $1,050.54 por gastos operacionales incurridos en beneficio de la empresa. Además, indicó que a partir de agosto de 2025 la parte apelada incurrió en un patrón de incumplimiento en el pago puntual de salarios, beneficios y reembolsos. Alegó que, en ese mismo mes, se eliminó unilateralmente el *car allowance* sin previo aviso, bajo la alegación de falta de ganancias, y que en septiembre de 2025 se le

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

notificó una reducción de su compensación mensual total de $8,000.00 a $4,000.00, aunque se le requirió mantener el mismo horario de trabajo y las mismas funciones.

Ante lo antes expresado, afirmó que se vio forzada a renunciar el 26 de diciembre de 2025 debido a la falta de pago de salarios correspondientes a varias quincenas comprendidas entre el 16 de octubre y el 31 de diciembre de 2025, por un total de $10,000.00. Alegó que, mediante su carta de renuncia, reclamó además el pago de vacaciones acumuladas, gastos operacionales y bono de Navidad. Señaló que realizó múltiples gestiones de cobro y que la parte apelada reconoció la deuda, indicando incluso que vendería un vehículo para pagarla, sin que hasta la fecha hubiese efectuado pago alguno.

Así pues, como remedio, reclamó el pago de $10,000.00 por salarios adeudados; $1,000.00 por bono de Navidad, más la penalidad legal correspondiente; $1,050.54 por reembolso de gastos operacionales; la liquidación de aproximadamente sesenta (60) días de vacaciones acumuladas y no disfrutadas, con las penalidades aplicables; intereses legales; y el quince por ciento (15%) por concepto de honorarios de abogado.

Los emplazamientos dirigidos a los apelados fueron debidamente diligenciados el 17 de marzo de 2026.[2] Posteriormente, el 31 de marzo de 2026, la apelante presentó una *Moción Solicitando Anotación de Rebeldía y Sentencia*.[3] Puntualizó que, el 18 de marzo de 2026 presentó una moción acreditando que la parte apelada fue emplazada personalmente y conforme a derecho el 17 de marzo de 2026. Sostuvo que, desde entonces, transcurrió en exceso el término de diez (10) días dispuesto por la Ley Núm. 2, *supra,* para contestar la demanda, sin que la parte demandada compareciera, contestara la querella, solicitara prórroga o mostrara causa para su incumplimiento.

---

[2] *Véase,* Entrada Núm. 6, SUMAC TPI.
[3] *Véase,* Entrada Núm. 8, SUMAC TPI.

Argumentó que, conforme a la Sección 3 de la Ley Núm. 2, 32 LPRA sec. 3120, ante la falta de contestación dentro del término correspondiente procede dictar sentencia en rebeldía concediendo el remedio solicitado. En consecuencia, solicitó al Tribunal que anotara la rebeldía de los apelados y dictara sentencia a su favor conforme a lo pedido en la demanda, incluyendo costas, gastos, honorarios de abogado y cualquier otro remedio procedente en derecho.

Evaluada la *Querella* presentada, el 16 de abril de 2026, el TPI dictó y notificó una *Sentencia*.[4] En esta, declaró No Ha Lugar la *Querella* presentada por la apelante al amparo de la Ley Núm. 2, *supra*. Consecuentemente, ordenó el cierre y archivo del caso. Fundamentó su determinación en que debido a que la señora Pérez presentó voluntariamente su renuncia con efectividad inmediata el 26 de diciembre de 2026, no se trataba de un despido injustificado por parte del patrono del cual quedaba protegido el obrero al amparo de la Ley Núm.2, *supra*. Además, ese mismo día, a saber, el 16 de abril de 2026, emitió y notificó una *Orden* declarando No Ha Lugar la solicitud de anotación de rebeldía.[5]

Inconforme con la *Sentencia* antes mencionada, el 11 de marzo de 2026, la señora Pérez presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

**ERRÓ EL TPI AL NEGARSE A ANOTAR LA REBELDÍA AL PATRONO Y EN DESESTIMAR LA DEMANDA BAJO EL FUNDAMENTO EQUIVOCADO DE QUE LA LEY NÚM. 2 SE LIMITA A CASOS DE DESPIDO INJUSTIFICADO, IGNORANDO QUE EL PROPÓSITO LEGISLATIVO Y EL TEXTO CLARO DE LA LEY PERMITEN QUE UNA EMPLEADA RECLAME SALARIOS Y BENEFICIOS ADEUDADOS MEDIANTE EL PROCEDIMIENTO SUMARIO LABORAL.**

II.

La Ley Núm. 2, *supra*, estableció un procedimiento sumario para la adjudicación de pleitos laborales. El objetivo de dicho proceso es "proveer un mecanismo procesal judicial que logre la rápida

---

[4] *Véase*, Entrada Núm. 10, SUMAC TPI.
[5] *Véase*, Entrada Núm. 11, SUMAC TPI.

consideración y adjudicación de las querellas presentadas por los obreros o empleados, principalmente en casos de reclamaciones salariales y beneficios". *Rodríguez Gómez v. Multinational Ins.*, 207 DPR 540, 569 (2021). En armonía con ese propósito, en *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921 (2008), el Tribunal Supremo reiteró que la naturaleza sumaria del procedimiento es su característica esencial, lo que impone a los tribunales el deber de promover diligencia y prontitud en la tramitación de estas reclamaciones.

Este mecanismo procesal extiende su aplicación a varios estatutos laborales, entre los cuales se encuentran: **las querellas por reclamaciones de salarios y beneficios**; las querellas instadas por despido injustificado bajo la Ley Núm. 80, *supra*; las reclamaciones bajo el Art. 5A de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1 *et seq.*; las reclamaciones al amparo del Art. 1 de la Ley Antidiscrimen, Ley Núm. 100 de 30 de junio de 1959, 29 LPRA sec. 146; y las reclamaciones al amparo de la Ley de Represalias, Ley Núm. 115, *supra*. (Énfasis suplido) *Ocasio v. Kelly Servs.*, 163 DPR 653, 665-666 (2005).

En ese sentido, la Ley Núm. 2, *supra*, provee un vehículo procesal diseñado para vindicar múltiples controversias obrero-patronales mediante un trámite sumario. Precisamente, la Sección 1 del estatuto, 32 LPRA sec. 3118, delimita el tipo de reclamaciones que pueden presentarse mediante este mecanismo especial al disponer lo siguiente:

> **Siempre que un obrero o empleado tuviere que reclamar de su patrono <u>cualquier derecho o beneficio</u>, <u>o</u> cualquier suma por concepto de compensación por trabajo o labor realizados para dicho patrono, <u>o</u> por compensación en caso de que dicho obrero o empleado hubiere sido despedido de su empleo sin causa justificada**, podrá comparecer ante la Sala Superior del Tribunal de Primera Instancia, del lugar en que realizó el trabajo o en que resida el obrero o empleado en la fecha de la reclamación y formular contra el patrono una querella en la cual se expresarán por el obrero o empleado los hechos en que se funda la reclamación. (Énfasis y subrayado nuestro).

Por otro lado, el carácter sumario del procedimiento se refleja en los términos estrictos que rigen la contestación de la querella. En ese sentido, la Sección 3 de la Ley Núm. 2, *supra*, establece lo siguiente:

> El secretario del tribunal notificará a la parte querellada con copia de la querella, apercibiéndole que deberá radicar su contestación por escrito, con constancia de haber servido copia de la misma al abogado de la parte querellante o a ésta si hubiere comparecido por derecho propio, **dentro de diez (10) días después de la notificación, si ésta se hiciere en el distrito judicial en que se promueve la acción, y dentro de quince (15) días en los demás casos,** y apercibiéndole, además, que si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle. (Énfasis suplido).

No cabe duda, por su claridad, de que la referida sección del estatuto dispone que el patrono deberá contestar la querella por escrito dentro de los diez (10) días siguientes a su notificación. *Vizcarrondo Morales v. MVM, Inc.*, supra, págs. 929-930. De ello surge el deber ministerial del tribunal de cumplir estrictamente con el procedimiento sumario dispuesto en la ley, pues carece de jurisdicción para extender dicho término *motu proprio*. Íd. Asimismo, toda solicitud de prórroga para contestar la querella debe presentarse dentro del término original para contestar. Íd., pág. 930.

En otras palabras, el tribunal no puede conceder una extensión para contestar la querella, salvo que medie una moción de prórroga juramentada presentada oportunamente y que exponga fundamentos suficientes. Íd. Aunque en circunstancias extraordinarias pudiera justificarse cierta flexibilidad procesal, la discreción judicial está limitada por el mandato expreso de la ley. Íd., pág. 936. Así, vencido el término sin contestación ni solicitud de prórroga, el tribunal únicamente conserva jurisdicción para anotar la rebeldía y dictar sentencia. Íd. A esos efectos, la Sección 4 de la Ley Núm. 2, 32 LPRA sec. 3121, dispone lo siguiente:

> Si el querellado no radicara su contestación a la querella en la forma y en el término dispuestos en la Sección 3 de esta Ley, el juez dictará sentencia contra el querellado, a instancias del querellante, concediendo el remedio solicitado. La sentencia a esos efectos será final y de la misma no podrá apelarse.

No obstante, el Tribunal Supremo aclaró que dicha sección debe interpretarse integralmente. *Marín v. Fastening Systems, Inc.*, 142 DPR 499, 508 (1997). Aunque la disposición indica que la sentencia será final y no apelable, también reconoce el derecho de la parte afectada a solicitar revisión de los procedimientos habidos en instancia dentro de los diez (10) días siguientes a la notificación de la sentencia. Íd.

De igual forma, el Tribunal Supremo reiteró que la consecuencia de no contestar oportunamente, sin acogerse a prórroga o sin que del expediente surjan causas justificadas para la dilación, es la anotación de la rebeldía y la concesión del remedio solicitado, sin más citar ni oír al querellado. *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 935. Sin embargo, una sentencia en rebeldía no garantiza per se un resultado favorable al querellante. *Continental Ins. Co. v. Isleta Marina*, 106 DPR 809, 817 (1978). Su efecto jurídico consiste en tener por admitidos los hechos bien alegados en la querella. Íd.

Por ello, las alegaciones conclusorias, las conclusiones de derecho y los señalamientos generales no bastan para sostener una adjudicación favorable a favor del demandante o querellante. *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 937. En consecuencia, para que proceda una sentencia en rebeldía bajo la Ley Núm. 2, *supra*, el empleado u obrero debe alegar o probar hechos que sustenten su derecho al remedio reclamado. *Ocasio v. Kelly Servs.,* supra, pág. 672. En ese análisis, el TPI debe determinar si de las aseveraciones de la querella "[s]urge una causa de acción a favor del recurrido y que procede, entonces, dictar sentencia en rebeldía en contra del demandado". *Lucero Cuevas v. San Juan Star*, 159 DPR 494, 681 (2003).

Finalmente, la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R 45.1, establece que la anotación de rebeldía tendrá el efecto de dar por admitidas las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b) de Procedimiento Civil, 32 LPRA Ap. V, R.45.2(b). Su propósito es desalentar tácticas dilatorias en el litigio. *González Pagán*

*et al. v. SLG Moret-Brunet,* 202 DPR 1062 (2019). Por su parte, la Regla 45.2 de Procedimiento Civil, *supra,* dispone que, cuando sea necesario determinar daños, corroborar alegaciones mediante prueba o investigar cualquier otro asunto, el tribunal deberá celebrar las vistas que estime necesarias. *Mitsubishi Motor v. Lunor y otros,* 212 DPR 807 (2023); *Continental Ins. Co. v. Isleta Marina, supra,* págs. 816-817.

### III.

En su único señalamiento de error, la apelante sostiene que incidió el TPI al negarse a anotar la rebeldía de la parte apelada y al desestimar la *Querella* bajo la premisa errónea de que la Ley Núm. 2, *supra,* únicamente aplica a casos de despido injustificado. Le asiste la razón. *Veamos.*

Surge del expediente que la señora Pérez presentó una *Querella* al amparo de la Ley Núm. 2, *supra,* en la cual reclamó, entre otros conceptos, salarios adeudados, bono de Navidad, liquidación de vacaciones acumuladas, reembolso de gastos operacionales e intereses legales. Es decir, la causa de acción instada no se limitó a una controversia relacionada con la terminación de empleo, sino que incluyó reclamaciones expresamente comprendidas dentro del ámbito protector de dicho estatuto.

La Ley Núm. 2, *supra,* fue aprobada con el propósito de proveer un mecanismo procesal judicial expedito para la rápida consideración y adjudicación de querellas laborales, particularmente aquellas relacionadas con salarios y beneficios. *Rodríguez Gómez v. Multinational Ins.,* supra, pág. 569. Contrario a lo resuelto por el TPI, la Ley Núm. 2, *supra,* no se circunscribe exclusivamente a acciones por despido injustificado. Por el contrario, la jurisprudencia ha reconocido expresamente que este mecanismo procesal cobija reclamaciones de salarios y beneficios, además de otras causas laborales. *Ocasio v. Kelly Servs.,* supra, págs. 665-666. Ello armoniza con el texto claro de la Sección 1 de la Ley Núm. 2, *supra,* la cual autoriza al obrero o empleado a reclamar de su patrono "cualquier derecho o beneficio" o "cualquier

suma por concepto de compensación por trabajo o labor realizados", además de compensación por despido sin justa causa.

Por consiguiente, erró el TPI al concluir que la renuncia voluntaria de la apelante impedía, por sí sola, la utilización del procedimiento sumario. El hecho de que la señora Pérez no fuese despedida no elimina ni extingue potenciales reclamaciones independientes por salarios devengados, beneficios acumulados, bonos, reembolsos u otras compensaciones alegadamente adeudadas por servicios ya prestados. Tales reclamaciones, de probarse, son precisamente de las contempladas por la Ley Núm. 2, *supra.*

Por otro lado, surge del expediente que los emplazamientos fueron diligenciados el 17 de marzo de 2026 y que, posteriormente, la apelante solicitó la anotación de rebeldía al transcurrir el término dispuesto por ley sin comparecencia de la parte querellada. Conforme a la Sección 3 de la Ley Núm. 2, *supra,* el patrono debía contestar dentro del término de diez (10) días después de la notificación de la querella, y vencido este sin contestación ni solicitud de prórroga, el tribunal debía atender el asunto conforme al marco normativo establecido por dicho estatuto. *Vizcarrondo Morales v. MVM, Inc., supra,* pág. 935.

Desde luego, la mera solicitud de rebeldía no garantiza automáticamente una sentencia favorable. *Continental Ins. Co. v. Isleta Marina, supra,* pág. 817. Corresponde al tribunal evaluar si de las alegaciones de la querella surge una causa de acción válida y, de ser necesario, celebrar las vistas pertinentes para corroborar extremos probatorios o determinar cuantías. *Lucero Cuevas v. San Juan Star, supra,* pág. 681; *Román Cruz v. Díaz Rifas, supra.* Sin embargo, lo que no podía hacer el TPI era desestimar la acción descansando en una interpretación restrictiva de la Ley Núm. 2 incompatible con su texto y propósito legislativo.

En vista de lo anterior, concluimos que el TPI incidió al declarar No Ha Lugar la *Querella* y al denegar la solicitud de anotación de

rebeldía bajo el fundamento de que la Ley Núm. 2, *supra,* solo aplica a casos de despido injustificado.

IV.

Por los fundamentos antes expuestos, **revocamos** el dictamen apelado y devolvemos el caso al TPI para la continuación de los procedimientos. En específico, el TPI deberá atender la solicitud de anotación de rebeldía presentada por la apelante y resolverla conforme a la Ley Núm. 2, *supra,* y a lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones